```
 1
 2
 3
 4
 5
 6
 7
 8                              UNITED STATES DISTRICT COURT
                               WESTERN DISTRICT OF WASHINGTON
 9                                        AT SEATTLE

10   JAMES L. GREMP, *et al.*,                    CASE NO. C08-558RSM
11                    Plaintiffs,
12           v.                                   ORDER
13   RICHARD RAMSEY, *et al.*,
14                    Defendants.
15
```

## **I. INTRODUCTION**

This matter comes before the Court on two separate motions to dismiss. (Dkts. #25 and #26). Defendants Richard Ramsey and Barbara Webb move to dismiss three of the five claims brought by Plaintiffs against them. The remaining Defendants - Kurtis and Hitomi Holmes, AIP Ventures, LLP, and Blair Sonthreelle - move to dismiss all of Plaintiffs' claims against them in their entirety. The Defendants move to dismiss pursuant to FRCP 12(b)(6).

For the reasons set forth below, the Court GRANTS IN PART Defendants Richard Ramsey's and Barbara Webb's Motion to Dismiss, and GRANTS IN PART Defendants Kurtis and Hitomi Holmes', AIP Ventures, LLP's, and Blair Sonthreelle's Motion to Dismiss.

## **II. DISCUSSION**

### **A.    Background**

The instant lawsuit arises from a corporation's failure to pay the principal amount of a promissory note. The corporation, Olympic Foods of Washington ("Olympic"), was originally

MEMORANDUM ORDER
PAGE - 1

formed in 1996 by Plaintiffs James and Karen Gremp, Defendants Richard Ramsey and Barbara Webb, and Defendant Kurtis Holmes. These individuals created Olympic for the purpose of owning and operating various Taco Bell restaurants in the greater Seattle area. The Gremps and Defendants Richard Ramsey and Barbara Webb, who later married, each held a 45% ownership in Olympic, while Defendant Kurtis Holmes owned the remaining 10% of the corporation. After two years, the relationship between Plaintiffs and the other shareholders deteriorated. As a result, the parties agreed on a buyout in 1998 wherein Olympic agreed to purchase Plaintiffs' ownership interest for $650,000, which was to be paid through various promissory notes. One specific promissory note provided that Olympic would pay Plaintiffs $150,000. This promissory note, dated March 8, 1999, essentially provided that Olympic would make monthly interest-only payments to Plaintiffs until March 8, 2003, when the principal amount of the note would be due. (*See* Pls.' Am. Compl., Ex. 1, ¶ 1).

Olympic proceeded to make these payments from 1999 through 2003. However, Olympic failed to make the $150,000 principal payment on March 8, 2003. Plaintiffs subsequently notified Olympic that they were in default on March 11, 2003 and demanded payment including interest thereunder. Plaintiffs also threatened to file suit against Olympic. Instead of paying the full amount, Plaintiffs and Olympic agreed that Olympic would continue making monthly interest-only payments for $812.50.

Meanwhile, Plaintiffs allege that unbeknownst to them, Olympic began negotiating the sale of its assets to Defendant AIP Ventures, LLP ("AIP"), a corporation formed by Defendant Kurtis and Hitomi Holmes and Defendant Blair Sonthreelle (collectively the "AIP Defendants"). The Holmes' owned 95% of AIP's stock while Defendant Sonthreelle owned the remaining 5%. Notably, the Holmes' ownership interest in Olympic had increased to 15% by this time, and Defendant Ramsey's ownership interest increased to 85%. In addition, Defendant Sonthreelle was Olympic's corporate controller.

The sale of Olympic to AIP eventually closed on August 4, 2005 for $6,291,574. (Pls.' Am. Compl., Ex. 2). The asset purchase agreement provided that AIP would pay Olympic $5,291,574 in cash and the remaining $1 million was guaranteed by a promissory note wherein

MEMORANDUM ORDER
PAGE - 2

AIP would make interest-only payments of $5,416.66 per month from August 1, 2005 through July 1, 2015. (Dkt. #27, Decl. of Holmes, Ex. B). The $1 million principal was to be due on July 1, 2015. (*Id.*). In addition, AIP did not assume any other liability, commitment, or obligation of Olympic as part of this deal other than $680,000 of long-term franchise-related debt. (Decl. of Holmes, Ex. A, §§ 2.1 and 2.2).

AIP secured an approximately $3.62 million loan to finance the deal. Plaintiffs allege that Olympic ultimately netted approximately $1.5 million in cash as a result of the agreement, and this amount was immediately transferred to Defendant Ramsey. Plaintiffs further allege that approximately $1.1 million was paid to Defendant Holmes. However, Defendant Holmes contends that this amount was only credited towards the purchase price, and not paid out directly to him. (Dkt. #26 at 4).

At roughly the same time that Olympic and AIP consummated their agreement, Olympic stopped making their monthly interest-only payments to Plaintiffs. As a result, Plaintiffs sent Olympic a letter on August 22, 2005 demanding payment. Olympic did not respond to this letter, and Plaintiffs subsequently sent an additional demand letter in February 1, 2006. Roughly two weeks later, Defendant Ramsey allegedly made several explicit misrepresentations to Plaintiffs, including that:

> [T]he assets of Olympic Foods was sold last August to AIP, however AIP has no other connection or relationship to [Olympic] or myself, and tghey [sic] did not assume any debts or liabilities. Additionally, Olympic Foods has no assets and currently has *a State of Washington tax levy in place* along with *various other judgments already awarded to secured debtors*. If you would like to discuss this further, I would be happy to set a call with you upon my return.

(Pls.' Am. Compl., ¶ 3.16) (emphasis in original).[1]

Plaintiffs also allege that in a subsequent telephone call on February 22, 2006, Defendant Ramsey continued making false representations when he stated that: (1) a vulture firm, Lone Star Financial, had received all available funds from the asset sale; (2) he personally did not

---

[1] Plaintiffs do not identify how this communication was made or otherwise submit an exhibit setting forth this communication. However, Defendants do not deny that this statement was made and therefore the Court will recognize the legitimacy of this statement.

MEMORANDUM ORDER
PAGE - 3

receive any funds from the asset sale; (3) he had purchased Defendant Holmes' interest in Olympic in 2004 for "a lot less than $50,000" because Olympic was in such bad financial shape; and (4) he could not provide any document or give further information about the sale because of a confidentiality agreement. (Pls.' Am. Compl, ¶ 3.17). However, Plaintiffs claim that they later learned that all of these representations were false. Plaintiffs specifically claim that Lone Star Financial only received $850,921.32 of the approximately $6.2 million purchase price of Olympic. Plaintiffs also allege that Defendant Ramsey personally received over $1.5 million from the sale as mentioned above, and that Defendant Holmes' equity interest in 2004 was much greater than $50,000 as reflected by the nearly $1.1 million he personally received from the sale. Plaintiffs also claim that no confidentiality agreement existed between Defendant Ramsey and either Olympic or AIP.

Shortly after Defendant Ramsey's phone call, Plaintiffs filed suit against Olympic on February 28, 2006 in King County Superior Court. On May 19, 2006, summary judgment was entered against Olympic in the amount of $189,361.55, which represented the principal amount of the original $150,000 promissory note plus interest and fees and costs. (Pls.' Am. Compl., ¶ 3.18). This amount remains unpaid today, and the instant lawsuit followed.

Plaintiffs, who are residents of Hawaii and bring this lawsuit based on diversity of citizenship, raise six different causes of action premised upon Washington law against the Defendants, including: (1) fraudulent transfer; (2) successor liability; (3) piercing the corporate veil; (4) conversion; (5) unjust enrichment, and (6) constructive trust. Plaintiffs' successor liability claim is directed only at AIP, and Plaintiffs' piercing the corporate veil claim is directed only at Defendants Ramsey and Webb. (*See* Pls.' Am. Compl., ¶¶ 4.2, 4.3). In addition to the allegations mentioned above, Plaintiffs summarily claim that Defendants selectively decided that Plaintiffs would not be paid from the asset sale due to their control positions in Olympic and their complete control over distribution of all monies received from AIP. Furthermore, Plaintiffs claim that AIP's purchase price of Olympic was well below the industry standard for such a transaction. Plaintiffs also point out that AIP paid Olympic $650,000 in November of 2005 in full satisfaction of the $1 million promissory note owed by AIP to Olympic, and that

MEMORANDUM ORDER
PAGE - 4

this amount was immediately transferred to Defendant Ramsey.

Defendants Ramsey and Webb now move to dismiss three of the five claims asserted against them, which include the claims for piercing the corporate veil, conversion, and unjust enrichment. The remaining AIP Defendants move to dismiss all five of Plaintiffs' claims against them in their entirety.

### B. Motion to Dismiss

Under FRCP 12(b)(6), the Court must dismiss a complaint if a plaintiff can prove no set of facts to support a claim which would entitle him to relief. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). In deciding a motion to dismiss, the Court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Associated Gen. Contractors*, 159 F.3d at 1181. In short, a plaintiff must proffer "enough facts to state a claim to relief that is *plausible* on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007) (emphasis added). A plaintiff alleging facts that are merely conceivable does not meet his burden. *Id.* When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court now turns to each specific claim raised by Plaintiffs.

### C. Fraudulent Transfer

The AIP Defendants seek dismissal of Plaintiffs' fraudulent transfer claim on the grounds that Plaintiffs provide no indicia of wrongdoing by the AIP Defendants. Plaintiffs' fraudulent transfer claim is based on the Uniform Fraudulent Transfer Act ("UFTA"), codified in Washington state by RCW 19.40. Under the UFTA, a transfer may be fraudulent under one of two general circumstances. First, a transfer made by a debtor with actual intent to hinder, delay, or defraud any creditor is fraudulent. RCW 19.40.041(a)(1). Second, a transfer made by a debtor without adequate consideration can be constructively fraudulent when (1) the debtor

MEMORANDUM ORDER
PAGE - 5

was engaged in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, RCW 19.40.041(a)(2)(I), or (2) the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer, RCW 19.40.051(a).[2]

In the case at bar, and as an initial matter, the Court notes that the AIP Defendants do not address the constructive fraud situations raised by Plaintiffs under RCW 19.40.041(a)(2) or 19.04.051(a). Indeed, as Plaintiffs indicate in their response to the AIP Defendants' motion to dismiss, the AIP Defendants do not even mention these statutes that Plaintiffs expressly include in their complaint. (Pls.' Am. Compl., ¶¶ 4.1.4 and 4.1.5). Even after this omission was pointed out by Plaintiffs, the AIP Defendants still chose to ignore the relevant statutes in their reply. The Court construes this silence as an admission that Plaintiffs' arguments have merit. *See* Local Rule CR 7(b)(2). Accordingly, Plaintiffs' claims for constructive fraudulent transfer under the afore-mentioned statutes shall not be dismissed.

The Court therefore turns to RCW 19.40.041(a)(1), the only fraudulent transfer claim addressed by the AIP Defendants. As mentioned above, a transfer made by a debtor is fraudulent under this statute if the debtor made the transfer with actual intent to hinder, delay, or defraud any creditor of the debtor. RCW 19.40.041(a)(1). The trial court may consider the following 11 factors, or "badges of fraud" in determining whether actual intent was present:

(1) The transfer or obligation was to an insider;

(2) The debtor retained possession or control of the property transferred after the transfer;

(3) The transfer or obligation was disclosed or concealed;

(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

---

[2] A transfer can also be constructively fraudulent where the debtor intended to incur, or believed he would incur, debts beyond his ability to pay as they became due. *See* RCW 19.40.041(a)(2)(ii). However, Plaintiffs do not claim constructive fraud under this portion of the statute. (*See* Pls.' Am. Compl., ¶¶ 4.1.1 - 4.1.6).

MEMORANDUM ORDER
PAGE - 6

|   |   |   |
|---|---|---|
| 1 | (5) | The transfer was of substantially all the debtor's assets; |
| 2 | (6) | The debtor absconded; |
| 3 | (7) | The debtor removed or concealed assets; |
| 4 | (8) | The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; |
| 5 | | |
| 6 | (9) | The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; |
| 7 | (10) | The transfer occurred shortly before or shortly after a substantial debt was incurred; and |
| 8 | | |
| 9 | (11) | The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. |

RCW 19.40.041(b).

As reflected by the plain-language of the statutes, it is clear that RCW 19.40.041(a)(1) and RCW 19.40.041(b) focus on the conduct of the debtor. In this case, however, the debtor is not a party to the lawsuit. As mentioned above, Plaintiffs have already secured a judgment against Olympic in King County Superior Court. Plaintiffs instead are attempting to bring a UFTA claim against the AIP Defendants. Therefore the key inquiry with respect to this claim is whether the AIP Defendants, as transferees, can be liable for fraudulent transfer.

Washington case law has recognized that under the UFTA, "a money judgment could be awarded to a creditor against a transferee if the transferee 'knowingly accepted the property with an intent to assist the debtor in evading the creditor and . . . placed the property beyond the creditor's reach.'" *See Park Hill Corp. v. Don Sharp, Inc.*, 60 Wn. App. 283, 287 (1991) (quoting *Deyong Management, Ltd. v. Previs*, 47 Wn. App. 341, 347, 735 P.2d 79 (1987)). Recent authority has even suggested that these elements need not be proven where a judgment has been entered against the debtor corporation. *See Thompson v. Hanson*, 142 Wn. App. 53, 63, 174 P.3d 120 (2007); *Eagle Pacific Ins. Co. v. Christensen Motor Yacht Corp.*, 85 Wn. App. 695, 705, 934 P.2d 715 (1997). This is consistent with the express language of RCW 19.40.081(b)(1) which allows a creditor to recover a judgment against any transferee. However, obtaining a money judgment against transferees is only available if the transfer with actual fraudulent intent is voidable. *See* 27 WAPRAC § 5.146(e). A transfer or obligation is

MEMORANDUM ORDER
PAGE - 7

not voidable "against person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." RCW 19.40.081(a).

Despite the presence of such well-recognized case law, Plaintiffs fail to discuss how and why the AIP Defendants, as transferees, should be liable for transfers made by Olympic, the debtor in this case. Indeed, Plaintiffs fail to even mention RCW 19.40.081 or the line of cases which indicate when a transferee is liable to the original debtor under the UFTA. Furthermore, the burden of proof rests upon the party alleging the fraudulent transfer. *Sedwick*, 73 Wn. App. at 885. Plaintiffs simply do not meet this burden.

In any event, the Court finds that Plaintiffs' RCW 19.40.041(a) claims are more closely connected with constructive fraud under RCW 19.40.041(a)(2)(I) and RCW 19.04.051(a). Plaintiffs' arguments are premised primarily on their allegation that Defendant Holmes did not receive any consideration for the $1 million-plus credit given to AIP in its purchase of Olympic. Therefore Plaintiffs are in essence alleging that the debtor did not receive reasonably equivalent value in exchange for the transfer, and that this transaction ultimately left Olympic with smaller assets in which to repay Plaintiffs. *See* RCW 19.40.051(a). Plaintiffs' allegations can also be construed as claiming that Olympic's assets were unreasonably small following the transaction. *See* RCW 19.40.041(a)(2)(I). And as previously established, these claims have survived the motion to dismiss stage due to the AIP Defendants' failure to respond. Thus, the Court shall dismiss Plaintiffs' fraudulent transfer claim under RCW 19.40.041(a) against the AIP Defendants. All other fraudulent transfer claims against all Defendants shall remain.

### D. Successor Liability

The AIP Defendants also seek dismissal of Plaintiffs' successor liability claim against AIP. It is well established that a purchasing corporation generally does not become liable for a selling corporation's debts. *Hall v. Armstrong Cork, Inc.*, 103 Wash.2d 258, 261, 691 P.2d 787 (1984). The rationale underlying this rule is based upon the notion that a "bona fide purchaser who gives adequate consideration and who lacks notice of prior claims against the property acquires no liability for those claims." *Id.* at 262. However, Washington law recognizes four exceptions to this general rule of non-liability. Successor liability will be imposed if:

(1) the purchaser expressly or impliedly agrees to assume liability;

(2) the purchaser is a de facto merger or consolidation;

(3) the purchaser is a mere continuation of the seller; or

(4) the transfer of assets is for the fraudulent purpose of escaping liability.

*Eagle Pacific*, 135 Wash. 2d at 901 (citing *Hall*, 103 Wash. 2d at 261).

In the instant case, Plaintiffs do not expressly identify one of the afore-mentioned exceptions to support their successor liability claim. Instead, Plaintiffs argue that they have a legitimate successor liability claim against AIP based on the allegation that AIP failed to pay adequate consideration to Olympic as part of the asset sale. They specifically claim that "[a]dequate consideration, or lack thereof, in an asset sale 'is an important element when determining whether to impose successor liability." (Dkt. #32 at 15) (quoting *Eagle Pacific*, 135 Wash.2d at 902). Further reading of the *Eagle Pacific* case reveals that adequate consideration is relevant for purposes of determining whether the transfer of assets was for the fraudulent purpose of escaping liability. *See id.* Plaintiffs are therefore alleging successor liability on the basis of this exception to the general rule of non-liability.

Nevertheless, Plaintiffs cannot make a cognizable successor liability claim because *Eagle Pacific* specifically indicates that "[i]f the buying corporation pays sufficient consideration for the seller's assets, the selling corporation's creditors can then seek to satisfy their judgments from the sale proceeds." *Id.* Other Washington courts have held similarly. *See*, *e.g.*, *Young Construction Co. Inc. v. Hedreen*, 63 Wn. App. 91, 98 (1991) (refusing to apply successor liability where a debtor's "inability to meet its obligations did not result from the transfer."). Here, there is no doubt that sufficient consideration was paid by AIP to Olympic. By Plaintiffs' own allegations, the asset sale left Olympic with more than sufficient funds to pay the promissory note to Plaintiffs in full. Specifically, Plaintiffs acknowledge that "Olympic netted $1,560,723.76 in cash" following the sale. (Pls.' Am. Compl., ¶ 3.11(a)). It was the conduct of Defendant Ramsey and Olympic following the asset sale that precluded Plaintiffs from recovering on their note. Thus, Plaintiffs fail to state a claim for relief against AIP for successor liability, and this claim shall be dismissed.

MEMORANDUM ORDER
PAGE - 9

### E. Piercing the Corporate Veil

Defendants Ramsey and Webb move to dismiss Plaintiffs' piercing the corporate veil claim. Under Washington law, "[t]he corporate entity is disregarded and liability assessed against shareholders in the corporation when the corporation has been intentionally used to violate or evade a duty owed to another." *Morgan v. Burks*, 93 Wash. 2d 580, 585, 611 P.2d 751 (1980) (citation omitted). Both of the following elements must be proved before the corporate entity will be disregarded:

1. That there is such a commingling of property rights or interest as to render it apparent that the corporation and some other entity were intended to function as one;

2. That to regard the corporation and the other entity as separate would aid the consummation of a fraud or wrong upon others.

Thomas V. Harris, *Washington's Doctrine of Corporate Disregard*, 56 Wash. L. Rev. 253, 258 (1981) (citing *Morgan*, 93 Wash. 2d at 587-88).

"The first element requires the court to determine whether the shareholders abused the corporate form," while "[i]n considering [the] second requirement, the court must determine, in each particular case, if any of the wrongful corporate activities actually harmed the party seeking relief." Harris, *supra*. The question of whether the corporate form should be disregarded is a question of fact. *Truckweld Equipment Co., Inc. v. Olson*, 26 Wn. App. 638, 643, 618 P.2d 1017 (1980). Every case is decided upon its own particular facts. *See* Harris, *supra*. The doctrine may be invoked even though there is no underlying claim against the corporation, in which case the doctrine creates a new liability against the shareholder. *Id.*

Here, Defendant Ramsey argues that Plaintiffs have no cognizable claim on the grounds that Plaintiffs' allegations are conclusory in nature and that they fail to connect the dots between the two elements of a piercing claim. However, it is clear that Plaintiffs' complaint suffers from no such deficiencies. First, they have clearly alleged that there was a "commingling of property rights." They have alleged that there were several instances in which Olympic wrongfully paid Defendant Ramsey's personal expenses in violation of the corporate form. (Pls.' Am. Compl., ¶ 3.19). Plaintiffs have also alleged that Defendant Ramsey owned other corporations that owed

MEMORANDUM ORDER
PAGE - 10

1 Olympic substantial amounts, but failed to keep the financial affairs of these companies separate
2 and distinct from Olympic. (*Id.*, ¶ 3.20).

Second, they have properly alleged that this conduct by Defendant Ramsey led to their detriment, as it ultimately resulted in Olympic's failure to pay Plaintiffs the amount due on the promissory note. The harm suffered by Plaintiffs is made concrete by the fact they obtained a judgment in King County Superior Court for the principal amount of the promissory note, an amount that remains unpaid. There can be no question that Plaintiffs have set forth facts that they have been harmed by Defendant Ramsey's failure to adhere to corporate formalities. Whether such allegations are true is not necessary for the Court to determine at this time.

Defendants Ramsey and Gremp nevertheless argue that Plaintiffs' piercing claim is improper because Plaintiffs have other remedies available to them, such as Plaintiffs' fraudulent transfer claim under the UFTA. (Dkt. #25 at 8-9) (citing *Morgan*, 93 Wash. 2d at 588). However, *Morgan* does not expressly prohibit a plaintiff's ability to assert liability against an individual under the doctrine of piercing the corporate veil simply because another similar claim is being brought. Ultimately, the doctrine is invoked "to prevent unjustified loss to the injured party." *Id.* at 587. As a result, the Court finds that Plaintiffs have sufficiently pled a cognizable claim for piercing the corporate veil at this stage of the proceedings.

### F. Conversion

All Defendants seek dismissal of Plaintiffs' conversion claim. "A conversion is the act of willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it." *PUD of Lewis County v. WPPSS*, 104 Wash. 2d 353, 378, 705 P.2d 1195 (1985) (citation omitted). Money is not generally considered chattel. Black's Law Dictionary (8th ed. 2004). However, Washington courts have held that money may be the subject of conversion if "it was wrongfully received by the party charged with conversion, or unless such party was under obligation to return the specific money to the party claiming it." *Westview Investments, Ltd. v. U.S. Bank Nat. Ass'n*, 133 Wn. App. 835, 852, 138 P.3d 638 (2006) (citations omitted).

Based on this case law, Defendants argue that because the money that was the subject of

MEMORANDUM ORDER
PAGE - 11

the promissory note and never belonged to Plaintiffs, none of them can be liable for the tort of conversion. The Court agrees. A fundamental premise of conversion is that the property must have rightfully been in the possession of the owner. *See In re Marriage of Langham and Kolde*, 153 Wash. 2d 553, 564, 106 P.3d 212 (2005); *Richards v. Seattle Metropolitan Credit Union*, 117 Wn. App. 30, 36, 68 P.3d 1109 (2003). Here, the money that was the subject of the promissory note was never owned by Plaintiffs. Instead, it was money owned by Olympic that Olympic promised to pay Plaintiffs.

Plaintiffs maintain, however, that a conversion claim can be asserted against anyone "wrongfully receiving" money. (Dkt. #32 at 19) (citing *Westview*, 133 Wn. App. at 852). Therefore they argue that the AIP Defendants are liable for conversion because they received Olympic's assets wrongfully. But in *Westview*, the company asserting conversion deposited their own money into a bank for a specific purpose, and the bank ultimately used the amounts to offset another company's debt. *Id*. at 853. The company therefore had a valid conversion claim against the bank. *Id*. *Westview* is consistent with the notion that to assert a proper conversion claim, the plaintiff must show that the money once belonged to him. Plaintiffs clearly cannot make such an argument.

In addition, and as Defendants Ramsey and Webb suggest, adopting Plaintiffs' broad proposition would fundamentally alter the structure of creditor and debtor rights, as it would allow a creditor to bring a claim of conversion against *any* recipient of *any* transfer of a debtor's funds. It would also potentially allow any claimant to bring a conversion claim against any subsequent transferee of that money, regardless of its source. The tort of conversion certainly was not intended to go so far. Plaintiffs' conversion claim shall be dismissed.

**G.     Unjust Enrichment**

All Defendants seek dismissal of Plaintiffs' unjust enrichment claim. Unjust enrichment occurs when one "has profited or enriched himself at the expense of another contrary to equity." *Dragt v. Dragt/DeTray, LLC*, 139 Wn. App. 560, 576, 161 P.3d 473 (2007) (citation omitted). Washington courts have narrowed this broad proposition by laying out three elements that must be established for unjust enrichment to occur: (1) there must be a benefit conferred on one party

by another; (2) the party receiving the benefit must have an appreciation or knowledge of the benefit; and (3) the receiving party must accept or retain the benefit under circumstances that make it inequitable for the receiving party to retain the benefit without paying its value. *Id.* (citation omitted).

Interestingly, Plaintiffs argue that the three-part test is not controlling in Washington. Plaintiffs instead urge the Court to view their claim in more general terms, and suggest that the doctrine is not limited to instances where a plaintiff conferred a benefit on a defendant. However, unjust enrichment is fundamentally a cause of action to recover "the value of the *benefit retained* absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wash. 2d 477, 484, 191 P.3d 1258 (2008) (emphasis added) (citation omitted). In any event, the Washington Supreme Court has recently recognized the validity of the three-part test. *See id.* Therefore Plaintiffs must, at the very least, show that they conferred some benefit upon the Defendants.

Here, Plaintiffs can make no such claim. There was never any benefit provided by Plaintiffs in this case, nor did Defendants receive any benefit from Plaintiffs. The closest Plaintiffs come to making an allegation that they conferred a benefit upon Defendants is when they indicate that they did not file suit against Olympic immediately after Olympic failed to pay the principal amount of the promissory note on March 8, 2003. However, Olympic continued making monthly interest-only payments to Plaintiffs in exchange for this benefit, and therefore paid for the "value" of the alleged benefit.

Ultimately, Plaintiffs' unjust enrichment claim has no place in this lawsuit given the facts of the case. Although the Court recognizes that "benefit" has been construed broadly by Washington courts, the true crux of this case lies in the fact that Olympic failed to pay amounts due to Plaintiffs pursuant to a promissory note. It was an alleged contractual failure by Olympic at the direction of its shareholders, and not any kind of benefit conferred by Plaintiffs, that necessitated this lawsuit. Accordingly, Plaintiffs' unjust enrichment claim is dismissed.

### H. Constructive Trust

Finally, the AIP Defendants seek dismissal of Plaintiffs' constructive trust claim.

Significantly, neither party bothers to engage in any meaningful discussion of this claim. In fact, Plaintiffs fail to even mention the rule of law for a proper constructive trust claim. Plaintiffs merely argue that because they have made out a claim for fraud and unjust enrichment, their constructive trust claim must survive. Plaintiffs' arguments are misguided. "A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Baker v. Leonard*, 120 Wash. 2d 538, 547-48, 843 P.2d 1050 (1993) (citations omitted); *see also Kausky v. Kosten*, 27 Wash. 2d 721, 728, 179 P.2d 950 (1947) (finding that a construct trust exists "under any . . . circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the *beneficial interest*.") (emphasis added) (citation omitted). Therefore like unjust enrichment, the claimant alleging a constructive trust must establish that a benefit was conferred upon another, and that the beneficiary retained the benefit at the claimant's expense. As established above however, Plaintiffs cannot point to any facts alleging that any benefit was extended to the AIP Defendants, and as a result, their constructive trust claim against them shall be dismissed.

In sum, many of Plaintiffs' claims in the instant case simply rely on general principles of equity in support thereof. However, the law requires more. In situations where a complaint alleges circumstances constituting fraud, as Plaintiffs have done here, they must "be stated with particularity." FRCP 9(b). The Ninth Circuit has held that Rule 9(b) "requires the identification of the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Bosse v. Crowell Collier & MacMillan*, 565 F.2d 602, 611 (9th Cir. 1977). Ultimately, Plaintiffs fail to specifically marry the facts of this case with many of the claims they set forth in their complaint. The majority of Plaintiffs' claims that are the subject of the two motions to dismiss before the Court are therefore dismissed. And while leave to amend is normally granted, the claims that the Court shall dismiss suffer from deficiencies that cannot be cured. *See Schreiber*, 806 F.2d at 1401. In addition, the Court has previously allowed Plaintiffs to amend their complaint.. (Dkts. #23 and #24).

### III. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

(1) Defendants Richard Ramsey and Barbara Webb's Motion to Dismiss (Dkt. #25) is GRANTED IN PART. Plaintiffs' claims for conversion and unjust enrichment against these Defendants shall be dismissed. All other claims against these Defendants remain.

(2) Defendants Kurtis and Hitomi Holmes, AIP Ventures, LLP, and Blair Sonthreelle's Motion to Dismiss (Dkt. #26) is GRANTED IN PART. Plaintiffs' claims for fraudulent transfer under RCW 19.40.041(a)(1), successor liability, conversion, unjust enrichment, and constructive trust shall be dismissed. The only remaining claim against these Defendants is Plaintiffs' constructive fraudulent transfer claim under RCW 19.40.041(a)(2) and RCW 19.40.051(a).

(3) Defendants are directed to file an answer to Plaintiffs' amended complaint within thirty (30) days from the date of this Order.

(4) The Clerk shall provide a copy of this Order to all counsel of record.

DATED this 14th day of January, 2009.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE